Docket No. 86215–Agenda 14–November 1999.

AMERICAN NATIONAL BANK & TRUST COMPANY, Special Adm’r for the Estate of Renee Kazmierowski, Deceased,

 Appellant, v. THE CITY OF CHICAGO 
et al.
, Appellees.

Opinion filed August 10, 2000.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, American National Bank and Trust Company, as special administrator of the estate of Renee Kazmierowski, brought the present action in the circuit court of Cook County against the defendants, the City of Chicago and two of its paramedics, John Glennon and Kevin T. O’Malley. Raising several theories of liability, the plaintiff sought recovery for the defendants’ alleged failure to respond properly to an emergency call by the decedent for medical assistance. The circuit court granted the defendants’ motion for dismissal of the complaint. The appellate court affirmed that judgment in an unpublished order. No. 1–97–1212 (unpublished order under Supreme Court Rule 23). We allowed the plaintiff’s petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now affirm in part and reverse in part the judgment of the appellate court and remand the cause to the circuit court for further proceedings.

The following factual summary is derived from the allegations in the plaintiff’s amended complaint and from the information contained in its accompanying exhibits, which include a transcript of the decedent’s emergency call and the paramedics’ report. At around 7:55 a.m. on April 24, 1995, the decedent, Renee Kazmierowski, suffered an asthma attack while at home at her apartment in Chicago. She called 911 to request help. She provided her address and telephone number and said that she lived on the third floor of the building. The 911 operator replied that paramedics were on the way; the operator did not attempt to keep the decedent on the telephone while the paramedics were responding to the call.

Two paramedics, John Glennon and Kevin T. O’Malley, were directed to respond to what they were told was a “heart attack” victim. They were allowed into the decedent’s apartment building by a neighbor in the building and went to the third floor. They asked the neighbor whether he had summoned help, and the neighbor replied that he had not. The paramedics then knocked on the door of the only other apartment located on the third floor, but they received no response. The neighbor escorted a firefighter, who had also responded to the call, through his apartment to the back of the building. The firefighter knocked on the back door, but he received no response and was not able to see into the apartment. While the firefighter was checking the back of the building, the paramedics called the dispatcher, who confirmed that they were at the correct address. In response to the paramedics’ questions, the dispatcher also said that the caller had not provided her age, and that an attempt to return the call had reached an answering machine. The neighbor told the paramedics that the apartment was occupied by a young couple, who did not appear to have any medical problems. The paramedics concluded that they were not needed at the address in question, and they left the scene. That afternoon, the same paramedics returned to the apartment, again in response to an emergency call. On this occasion, a man let the paramedics into the apartment, and they found the decedent lying dead on the floor.

The plaintiff’s amended complaint comprised a total of 11 counts. These alleged negligence and willful and wanton misconduct, and sought recovery from the City and the two paramedics under the Wrongful Death Act and the Survival Act. An additional count sought to impose liability on the City under a federal civil rights provision. The complaint alleged that the 911 operator acted negligently, willfully, and wantonly in failing to keep decedent on the phone while the paramedics responded. The complaint further alleged that the front door of decedent’s apartment was unlocked when the paramedics responded to her call, and that the paramedics acted negligently, willfully, and wantonly in failing to try the unlocked door and enter the apartment.

The defendants moved to dismiss the amended complaint under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1994)). The defendants argued that they were immune from liability for the decedent’s death under the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/1 through 33 (West 1994)). The defendants further contended that the plaintiff had failed to adequately allege that they owed the decedent a special duty of care or engaged in willful and wanton misconduct. The circuit court granted the defendants’ motion, ruling that the defendants were immune from liability under the EMS Act and that the plaintiff had failed to adequately allege a special duty or willful and wanton misconduct.

The appellate court affirmed the circuit court judgment in an unpublished order. No. 1–97–1212 (1998) (unpublished order under Supreme Court Rule 23). The appellate court rejected the defendants’ contention, raised for the first time on appeal, that section 5–101 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/5–101 (West 1994)) granted immunity to the defendants. The appellate court concluded, however, that section 17 of the EMS Act (210 ILCS 50/17 (West 1994)) immunized the defendants from liability for the decedent’s death. The appellate court also held that the plaintiff had failed to adequately allege that the defendants owed the decedent a special duty or that their conduct was willful and wanton. We allowed the plaintiff’s petition for leave to appeal. 177 Ill. 2d R. 315. We later granted leave to the Illinois Trial Lawyers Association and to the Illinois Governmental Association of Pools and the Illinois Municipal League to submit briefs as 
amici curiae
. 155 Ill. 2d R. 345. For the reasons that follow, we now affirm in part and reverse in part the judgment of the appellate court, and we remand the cause to the circuit court for further proceedings.

Before this court, the plaintiff does not challenge the dismissal of counts I, II, and XI of the amended complaint; counts I and II charged the City with negligence, and count XI alleged a violation of the decedent’s civil rights. Among the counts that remain, counts III and IV allege willful and wanton misconduct by the City for its failure to implement and enforce proper training for paramedics and for its failure to train and supervise the paramedics; count V seeks to recover from the City for its vicarious liability for the willful and wanton misconduct of the two paramedics in this case. Counts VI, VII, VIII, and IX are directed against paramedics Glennon and O’Malley; these counts allege negligence by the paramedics and seek recovery under the Wrongful Death Act and the Survival Act. The final count remaining for our consideration is count X, which alleges willful and wanton misconduct by the two paramedics.

A motion to dismiss brought pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1994)) attacks the legal sufficiency of a complaint. In ruling on a section 2–615 motion, a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from the complaint. The court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover. 
McGrath v. Fahey
, 126 Ill. 2d 78, 90 (1988).

The plaintiff initially argues that the defendants’ section 2–615 motion to dismiss should not have been considered by the trial court because portions of the motion instead should have been included in a motion brought under section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 1994)), which permits the dismissal of an action because of certain affirmative defects or defenses. We believe that the plaintiff has waived this objection, however, for the plaintiff failed to raise it in the circuit court. See 
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 536 (1996). We now turn to the merits of the present appeal.

In support of the appellate court’s and circuit court’s rulings, the defendants contend that the present action is barred by the immunity provision found in section 5–101 of the Tort Immunity Act (745 ILCS 10/5–101 (West 1994)). The defendants did not raise this contention in the circuit court, but they argued the point before the appellate court in support of the circuit judge’s favorable ruling. The appellate court disagreed with the defendants, who renew the contention before this court, arguing that section 5–101 of the Tort Immunity Act applies to this case and grants them immunity in these circumstances. Section 5–101 provides:

“Neither a local public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection, rescue or other emergency service.

As used in this Article, ‘rescue services’ includes, but is not limited to, the operation of an ambulance as defined in the Emergency Medical Services (EMS) Systems Act.” 745 ILCS 10/5–101 (West 1994).

The appellate court ruled that section 5–101 provides immunity “only where a public entity chooses not to provide any fire protection, rescue or emergency services at all, and not where a public entity offers these services in general but fails to provide them in a particular case.” The defendants challenge the appellate court’s interpretation, arguing that the statute immunizes a local public entity that establishes a rescue service but fails to competently use that service when summoned by a particular plaintiff. We do not agree.

We believe that section 5–101 immunizes only a local public entity that has not established a fire department or rescue service, or has not instituted a system for otherwise providing fire or rescue services. This result is clear from a reading of section 5–102, which immediately follows section 5–101. Section 5–102 immunizes “a local public entity that has undertaken to provide fire protection service” from liability for injuries “resulting from the failure to suppress or contain a fire.” 745 ILCS 10/5–102 (West 1994). Because section 5–102 applies to municipalities that have “undertaken to provide” fire protection service, it was clearly meant to contrast with section 5–101, which governs municipalities that have not undertaken to provide such service. Further support for this interpretation comes from section 5–101 itself, which defines “rescue services” as including the “operation of an ambulance.” 745 ILCS 10/5–101 (West 1994). Under section 5–101, public entities that have not provided for the “operation of an ambulance” are thus immune from liability for that omission, while public entities that do provide for the “operation of an ambulance” are not covered by the statute–they are covered by the provisions of the EMS Act instead. Because the complaint in the instant case alleged that the City of Chicago has established a system for providing emergency rescue services, section 5–101 does not apply in these circumstances.

We next consider the provisions of the EMS Act and the immunity afforded by it. As an initial matter, the plaintiff argues that the provision is not applicable at all to this case. At the time of the decedent’s death, in April 1995, section 17(a) of the EMS Act provided as follows:

“Any person, agency or governmental body licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services during a Department approved training course, in the normal course of conducting their duties, or in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions, including the bypassing of nearby hospitals or medical facilities for the purpose of transporting a trauma patient to a designated trauma center in accordance with the protocols developed pursuant to section 27 of this Act, are inconsistent with the persons’s training or constitute willful or wanton misconduct.” 210 ILCS 50/17(a) (West 1994).

Section 17(b) of the EMS Act similarly provided immunity for acts or omissions “in connection with administration, sponsorship, authorization, support, finance, or supervision of emergency medical services personnel, where the act or omission occurs in connection with their training or with services rendered outside a hospital unless the act or omission was the result of gross negligence or willful misconduct.” 210 ILCS 50/17(b) (West 1994). We note that both provisions have been amended since the decedent’s death. The legislature has now omitted, from section 17(a), the reference to acts or omissions “inconsistent with the person’s training,” and has reformulated, in section 17(b), the standard of non-immunized conduct to be that involving “willful and wanton misconduct.” See 210 ILCS 50/3.150(a), (b) (West 1996). The parties agree that the operative provisions in this case are the ones that were in force at the time of the decedent’s death.

The plaintiff contends that section 17(a) applies only when paramedics have actually rendered life support treatment to a patient; the plaintiff maintains that the failure of the responding paramedics in this case to administer any treatment at all to the decedent means that the provision has no application here. In support of this interpretation, the plaintiff cites the provisions appearing in sections 4.02, 4.06, and 4.20 of the EMS Act, which respectively define the terms “Advanced Life Support–Mobile Intensive Care Services,” “Basic Life Support Services,” and “Intermediate Life Support Services.” 210 ILCS 50/4.02, 4.06, 4.20 (West 1994). The plaintiff notes that each of these levels of life support treatment involves the performance of acts or procedures directly involving patient care. The plaintiff thus construes these definitions as signifying that the reference to life support services in the immunity provision of section 17(a) must refer to the actual rendition of medical treatment, and not to the conduct at issue in this case, in which no treatment was ever administered.

We do not believe that the scope of section 17(a) is as narrow as the plaintiff believes it to be. We conclude that the provision applies to this case, even though the acts and omissions alleged here do not relate to the actual rendition of life support treatment. Although the EMS Act does not define the general term “life support services,” we do not believe that we are limited, in interpreting section 17(a), by the specialized meanings assigned to the terms “advanced life support–mobile intensive care services,” “basic life support services,” and “intermediate life support services.” Those definitions are designed to distinguish one level or form of care from another, and the legislature could reasonably have decided to omit from the definitions conduct that is common to them all or, though preparatory to the actual rendering of medical care, is no less an integral part of providing life support services. Moreover, section 17(a) also refers to the transportation of patients. If transporting a patient to a hospital is an aspect of life support services, then so too should locating a patient in the first place. Other provisions in the EMS Act also demonstrate that the immunity provisions of section 17 apply in these circumstances. Elsewhere, the Act regulates matters such as communications, response time, and standards for ambulance operation. 210 ILCS 50/7, 7.1, 9 (West 1994). These additional measures are evidence of the Act’s broad scope, and of the equally broad meaning we believe must be given to the term “life support services” in the immunity provisions.

The parties also dispute the scope of the immunity provided by section 17(a) of the EMS Act. That provision, by its terms, affords immunity to two distinct types of activity: conduct that is “inconsistent with the person’s training” as a paramedic, and conduct that is willful and wanton. The parties do not agree on the reach of the former category, involving conduct that is “inconsistent with the person’s training.” The plaintiff insists that the provision does not afford immunity for conduct that is contrary to or violates training received by a paramedic. The defendants, in contrast, construe this exception more narrowly, contending that it withholds immunity merely for conduct that is beyond the level of a paramedic’s training; the defendants maintain that the provision otherwise provides complete immunity for negligence.

We agree with the defendants’ interpretation. We believe that this portion of section 17(a) means that conduct that is beyond the level of a paramedic’s training is not immunized, while conduct that merely deviates from a paramedic’s training and constitutes negligence is subject to immunity. The appellate court has adopted this interpretation in a series of cases.
 Bowden v. Cary Fire Protection District
, 304 Ill. App. 3d 274, 280 (1999);
 Brock v. Anderson Road Ass’n
, 287 Ill. App. 3d 16, 23-24 (1997); 
Gleason v. Village of Peoria Heights
, 207 Ill. App. 3d 185, 188-89 (1990). We believe that that construction of the statutory language better effectuates the legislative intent. Under the plaintiff’s broad reading, which would withhold immunity for conduct that violates a person’s training, the exception would threaten to supplant the immunity rule, for virtually any negligent act could be said to be inconsistent with or in violation of a person’s training. The plaintiff has not alleged that the actions of the paramedics were beyond their level of training, and therefore we conclude that section 17(a) operates to immunize them for their conduct, unless it rises to the level of willful and wanton misconduct.

We next consider whether the plaintiff’s amended complaint sufficiently alleges willful and wanton misconduct. The circuit court believed that the allegations were merely conclusory, and the appellate court agreed. The defendants argue that the lower courts’ determinations were correct.

It is the plaintiff’s duty to sufficiently allege conduct that falls within the scope of a recognized cause of action. Moreover, mere conclusory allegations are not sufficient. We believe, however, that the allegations contained in the plaintiff’s amended complaint are sufficient to withstand the defendants’ motion to dismiss.

This court has previously defined “willful and wanton misconduct” in the following terms:

“ ‘A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.’ ”  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 273 (1994), quoting
 Schneiderman v. Interstate Transit Lines, Inc
., 394 Ill. 569, 583 (1946).

We believe that the allegations in the plaintiff’s amended complaint are sufficient, creating a question for the trier of fact to determine whether the defendants’ conduct was willful and wanton. According to the complaint, the decedent, Renee Kazmierowski, called 911 on the morning of April 24, 1995, and requested help, explaining that she was having an asthma attack. She provided her address and telephone number and said what floor she lived on. She also told the dispatcher, “I think I’m going to die. Hurry.” The dispatcher did not attempt to keep Renee on the line, however, as required by applicable standards.

Moreover, according to the allegations in the plaintiff’s amended complaint, paramedics routinely receive instruction on how to respond to calls and, in particular, on how to locate persons in need of emergency medical treatment. The plaintiff alleges that training given to paramedics in Chicago, like training given to paramedics everywhere else, includes the following:

“[I]nstruction, training and enforcement of the standard ‘Try Before You Pry’ which dictates that firefighters, paramedics and other rescue personnel should always attempt to open a shut door by turning the door knob before engaging in destructive methods to gain access, or before exiting the scene altogether, without gaining access in order to ensure delivery of emergency health care services to the critically ill caller.”

In the present case, the victim’s door was unlocked. If the paramedics had been following these vital and basic precepts of their training, as alleged, they would have found the victim inside the residence, and perhaps then they could have saved her life. Locating a person in need of emergency medical treatment is the first step in providing life support services. Not even that first step was taken here. We believe that the portions of the amended complaint that allege willful and wanton misconduct by the defendants are sufficient to withstand the defendants’ motion to dismiss, and we therefore remand the action to the circuit court for further proceedings.

For the reasons stated, the judgment of the appellate court, affirmed the judgment of the circuit court of Cook County, is affirmed in part and reversed in part, and the cause is remanded to the circuit court of Cook County for further proceedings.

Affirmed in part and reversed in part;

cause remanded.

JUSTICE HEIPLE, dissenting:

On April 24, 1995, Renee Kazmierowski (decedent) suffered an asthma attack at her apartment in Chicago. Decedent called 911 and stated: “I need help. I’m having an asthma attack. I think I’m going to die. Please hurry.” The 911 operator told decedent that paramedics were on the way, but failed to keep decedent on the phone while the paramedics were responding. When the defendant paramedics arrived at the reporting apartment, they knocked loudly but received no response. A next-door neighbor escorted one of the responding officers through his apartment to check the back door of the reporting apartment, but the officer received no response there either. The neighbor told the paramedics that in the apartment lived a young couple who appeared to have no medical problems. The paramedics called the dispatcher, who confirmed that they were at the correct address. Concluding that there was no indication that they were needed at the address, the paramedics reported back in service. Later that day, the defendant paramedics were again called to the same apartment. This time, a man let them into the apartment and showed them on the floor the dead body of his girlfriend, who had died of an asthma attack.

The majority holds that the complaint filed by the administrator of decedent’s estate adequately alleged willful and wanton misconduct under section 17(a) of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/17(a) (West 1994)). Contrary to the majority’s holding, this statutory section does not even apply to this case.

Section 17(a) states that a person who “provides life support services” shall not be liable for the results of their acts or omissions unless those acts or omissions are “inconsistent with the person’s training or constitute willful or wanton misconduct.” 210 ILCS 50/17(a) (West 1994). The majority errs in holding that the defendants in this case provided life support services within the meaning of the statute. The statute defines life support services as “emergency medical care,” and lists as examples of such services “airway management, cardiopulmonary resuscitation, control of shock and bleeding and splinting of fractures.” 210 ILCS 50/4.02, 4.06, 4.20 (West 1994). According to the allegations of the complaint, the defendant paramedics provided no life support services to the decedent. Although the 911 dispatcher promised to provide such services, the services were never provided because the paramedics did not locate the decedent. The majority seems to believe that because the statute applies to the 
transportation
 of patients, it necessarily applies to the 
locating
 of patients as well. There is absolutely nothing in the statute to support such a reading. Defendants never even began to provide life support services, because they did not even see the patient. Because the statute immunizes only “acts or omissions in providing [life support] services,” the statute does not apply to any acts or omissions of the instant defendants, whether willful and wanton or otherwise. 210 ILCS 50/17(a) (West 1994).

The City argues, however, that even if this immunity statute does not apply, it is still immune from liability in the instant case under the common law “public duty” rule. The public duty rule prevents units of local government from being held liable for their failure to provide adequate governmental services such as police and fire protection. 
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 345 (1998); 
Leone v. City of Chicago
, 156 Ill. 2d 33, 37 (1993); 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 509 (1990). The rationale for the rule is that the duty of government to provide such protective services is owed to the public at large and therefore takes precedence over any duty owed to a particular plaintiff. 
Zimmerman v. Village of Skokie
, 183 Ill. 2d 30, 44 (1998); 
Harinek
, 181 Ill. 2d at 345. The public duty rule exists independently of any statutory immunities and notwithstanding the abolition in Illinois of common law sovereign immunity. 
Zimmerman
, 183 Ill. 2d at 45-46; 
Harinek
, 181 Ill. 2d at 345, 347; 
Huey v. Town of Cicero
, 41 Ill. 2d 361, 363 (1968). Under the public duty rule, then, the City is presumptively immune from liability for its failure to promptly locate and treat the decedent.

This court has recognized, however, an exception to the public duty rule known as the “special duty” doctrine. Under this doctrine, a municipality may be held liable for its failure to provide adequate governmental services if the legislature has not granted immunity to the municipality. 
Harinek
, 181 Ill. 2d at 347. To invoke the special duty doctrine, a plaintiff must prove the following elements:

(1) that the municipality was uniquely aware of the particular danger or risk to which the plaintiff was exposed;

(2) that the municipality engaged in specific acts or omissions that were affirmative or willful in nature; and

(3) that the injury occurred while the plaintiff was under the direct and immediate control of municipal employees or agents.

See 
Leone
, 156 Ill. 2d at 37; 
Burdinie
, 139 Ill. 2d at 508. For example, in 
Leone v. City of Chicago
, 156 Ill. 2d 33 (1993), this court found a special duty where a police officer directed the plaintiff to stand between her car and his police car, which was then struck from behind, injuring her.

Assuming 
arguendo
 that the complaint in the instant case satisfies the first of the requirements for a special duty, I would hold that it fails to satisfy the remaining elements. The complaint fails to establish that the City or its employees engaged in affirmative or willful acts or omissions in connection with decedent’s death. The complaint simply alleges that the 911 dispatcher failed to keep decedent on the phone while the paramedics were responding and that the paramedics failed to try the doorknob in order to enter decedent’s apartment. At most, these allegations show that the city employees neglected to perform certain tasks. There is no indication of a conscious decision by the employees not to perform the tasks. Rather, the employees attempted to locate decedent but neglected to try the doorknob to gain entry to her dwelling. This conduct was neither affirmative nor willful.

Furthermore, the complaint fails to adequately allege that decedent was under the direct and immediate control of the City. Although decedent called 911 for assistance, the paramedics had not located her and were not physically in her presence at the time of her death. In 
Doe v. Calumet City
, 161 Ill. 2d 374 (1994), this court refused to find a special duty where police officers failed to enter an apartment to prevent a violent crime that was occurring. 
Doe
, 161 Ill. 2d at 387. We held that because the officers had not initiated the circumstances that brought harm to the victims, the victims were not under the officers’ direct and immediate control. 
Doe
, 161 Ill. 2d at 387. Similarly, in the instant case the City had no part in initiating the harm that befell decedent. Although the complaint may establish that the City employees performed their duties incompetently, it fails to establish that they owed decedent a special duty. The public duty rule therefore immunizes the City from liability for her death.

For these reasons, I respectfully dissent.

JUSTICES BILANDIC and RATHJE join in this dissent.