Docket No. 104935.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

JO ANN ABRUZZO, Independent Adm'r of the Estate of Joseph
Furio, Deceased, Appellant, v. THE CITY OF PARK RIDGE,
Appellee.

*Opinion filed October 2, 2008.*

JUSTICE KILBRIDE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

Plaintiff Jo Ann Abruzzo sued the City of Park Ridge, alleging
the City's emergency medical technicians were dispatched to provide
medical care to her minor son, Joseph Furio, but left without
examining him or providing any treatment. Plaintiff alleged Joseph
died as a result of the City's willful and wanton misconduct. The City
filed a motion to dismiss under section 2–619 of the Code of Civil
Procedure (Code) (735 ILCS 5/2–619(a)(9) (West 2004)), asserting
immunity under the Local Governmental and Governmental
Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS
10/1–101 *et seq.* (West 2004)). The circuit court of Cook County
granted the motion to dismiss, and the appellate court affirmed. 374

Ill. App. 3d 743. We allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315(a).

In this appeal, we must decide whether the Tort Immunity Act immunizes the City from liability for the acts alleged in the complaint. We hold that the limited immunity provision of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/3.150(a) (West 2004)) applies to these facts over the Tort Immunity Act. Accordingly, we reverse the dismissal of plaintiff's complaint and remand for further proceedings.

## I. BACKGROUND

Plaintiff filed a complaint as the independent administrator of Joseph's estate seeking damages under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2004)), the Survival Act (755 ILCS 5/27–6 (West 2004)), and the Rights of Married Persons Act (750 ILCS 65/15 (West 2004)). Plaintiff's amended complaint alleged that Joseph was 15 years old and staying with his father, Lawrence Furio, in the City of Park Ridge on October 31, 2004. At 1:06 a.m., Lawrence called 911 to request emergency assistance for Joseph, "a nonresponsive child who required CPR."

The City dispatched a fire engine and an ambulance staffed by emergency medical technicians (EMTs), paramedics, and firefighters. Upon their arrival, Joseph was unresponsive. Plaintiff alleged the EMTs, paramedics, and firefighters did not evaluate, assess, provide advanced life support, or transport Joseph to a hospital despite his condition requiring immediate medical treatment. The complaint further alleged that the EMTs and paramedics knew or should have known that Joseph had a history of drug abuse. Plaintiff alleged the City acted with willful and wanton disregard for Joseph's health and safety by responding to the request for emergency medical services and failing to evaluate or assess him, failing to transport him to a hospital, and failing to prepare a "run sheet" for the 911 call. Plaintiff further alleged that Joseph died as a result of the alleged acts or omissions.

Plaintiff attached to her amended complaint a certificate of merit with a physician's report, as required by section 2–622 of the Code (735 ILCS 5/2–622 (West 2004)). The physician's report notes that

-2-

the EMTs and paramedics did not prepare a run sheet for the emergency response and there is no record of any assessment or treatment during the response. The report states that basic principles of training, standing orders and protocols, and accepted emergency procedures require EMTs to evaluate and assess any person with an altered mental status. The treatment for a person with an altered mental status requires initiation of advanced life support and assessment of airway, breathing, and circulation. Joseph was presumed to have an altered mental status because he was unresponsive.

The physician's report further states that a second 911 call was made on Joseph's behalf at 9 a.m. on October 31, 2004. Joseph was in cardiac arrest upon the emergency responders' arrival. The emergency responders began resuscitation and transported Joseph to a local hospital where he died. The cause of death was anoxic encephalopathy due to cocaine and opiate intoxication. The physician's report concluded that failures of the emergency responders were a proximate cause of Joseph's death.

The City filed a motion to dismiss the complaint under section 2–619, claiming immunity based on sections 6–105 and 6–106(a) of the Tort Immunity Act (745 ILCS 10/6–105, 6–106(a) (West 2004)). The City asserted that plaintiff's allegations fell within the absolute immunity of sections 6–105 and 6–106(a), barring liability against a local public entity for failure to evaluate, diagnose, or prescribe treatment for an illness or physical condition.

Plaintiff responded that the Tort Immunity Act did not immunize the alleged act of failing to provide any assistance to her unresponsive son. Along with her response, plaintiff filed a motion to amend the complaint to conform with the physician's report. Plaintiff sought to add allegations that the City acted with willful and wanton disregard for Joseph's health by failing to initiate advanced life support and failing to assess his airway, breathing, and circulation. Plaintiff alleged that those actions were required due to Joseph's altered mental status. The City replied that the EMTs' alleged failure to provide services fell squarely within the provisions of the Tort Immunity Act.

The trial court found that the Tort Immunity Act applied to the allegations of the complaint. The trial court did not rule on plaintiff's

motion to amend the complaint, but noted that the proposed amendment would not alter or prevent application of the Tort Immunity Act to these facts. Accordingly, the trial court granted the City's motion to dismiss the complaint with prejudice.

On appeal, plaintiff argued that the Tort Immunity Act is inapplicable because the immunity provision of the EMS Act is more specifically directed to the facts alleged in the complaint. Plaintiff contended that the EMS Act does not provide immunity in this case because the emergency responders were willful and wanton in failing to provide any treatment to Joseph. The City maintained that the absolute immunity provision of the Tort Immunity Act applied because no treatment was provided by the emergency responders.

The appellate court held that the plain language of the Tort Immunity Act applied to plaintiff's allegations that the EMTs and paramedics failed to examine, diagnose, or otherwise treat the decedent. The Tort Immunity Act applied to the exclusion of the immunity provision of the EMS Act. The City was, therefore, immune from liability. Accordingly, the appellate court affirmed the trial court's dismissal of the complaint. 374 Ill. App. 3d 743.

We allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315(a). We then allowed the Associated Firefighters of Illinois to file an *amicus curiae* brief in support of the City. 210 Ill. 2d R. 345.

## II. ANALYSIS

The sole issue in this appeal is whether sections 6–105 and 6–106(a) of the Tort Immunity Act apply to immunize the City from liability for the acts alleged in plaintiff's complaint. Plaintiff contends that the EMS Act's immunity provision applies here because that Act is comprehensive legislation designed to ensure delivery of emergency medical services. Plaintiff also argues that the limited immunity provision in the EMS Act is more specific and should apply over the more general provisions of the Tort Immunity Act. The City's alleged willful and wanton misconduct is not immunized under the EMS Act. Accordingly, plaintiff contends that the trial court erred in granting the City's section 2–619 motion to dismiss the complaint.

The City responds that the Tort Immunity Act applies *before* providing any emergency medical services. The EMS Act immunity

provision applies only *after* medical services are undertaken in good faith. The Tort Immunity Act, therefore, applies to plaintiff's allegations that the emergency responders arrived, but failed to examine, diagnose, or prescribe any treatment for Joseph. The City also argues that the EMS Act does not impose a duty to provide emergency medical services in responding to a 911 call. Rather, the EMS Act applies only upon providing actual emergency medical services. The City contends, therefore, that the trial court properly found plaintiff's claim barred by the Tort Immunity Act.

We note the facts alleged in the complaint are unusual. Ordinarily, it is accepted that emergency responders will provide necessary aid upon arriving at an emergency. In this case, however, plaintiff alleges that the emergency responders arrived at the residence and then left without evaluating or giving necessary treatment to her unresponsive minor son. Although these alleged facts are unusual, we must accept them as true in reviewing the dismissal under section 2–619. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993) (a defendant filing a section 2–619(a)(9) motion to dismiss admits the legal sufficiency of the complaint, but asserts a defense to defeat the claim other than negation of the plaintiff's essential allegations). Thus, although plaintiff's factual allegations seem unusual, we must determine whether sections 6–105 and 6–106(a) of the Tort Immunity Act or the EMS Act's immunity provision governs those allegations.

Section 2–619(a)(9) of the Code provides for dismissal of a claim if it is barred by "affirmative matter." 735 ILCS 5/2–619(a)(9) (West 2004). Immunity under the Tort Immunity Act is an affirmative matter properly considered in a section 2–619 motion to dismiss. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). Governmental entities bear the burden of establishing immunity under the Tort Immunity Act. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003). In ruling on a section 2–619 motion to dismiss, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68, quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). We review *de novo* the dismissal of a complaint under section 2–619. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

-5-

In this case, we must construe the provisions of the Tort Immunity Act and the EMS Act. We review *de novo* the interpretation of a statute as a question of law. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006). The best indication of the legislature's intent is the statutory language given its plain and ordinary meaning. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007). When the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007).

The City contends that if the statutes appear to conflict, they must be interpreted *in pari materia* giving effect to both. When the plain language of two statutes conflicts, we will attempt to construe them together, *in pari materia*, if such an interpretation is reasonable. *Moore v. Green*, 219 Ill. 2d 470, 479 (2006). Legislative intent remains the foremost consideration, however. *Moore*, 219 Ill. 2d at 479. In determining that intent, we may consider the statutes in their entirety, their purposes, the problems they target, and the goals they seek to achieve. *Moore*, 219 Ill. 2d at 479-80, citing *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). Words and phrases should not be interpreted in isolation, but must be construed in light of other relevant provisions of the statute. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007).

The first step in our analysis is to determine whether both statutes actually apply to plaintiff's complaint. Section 6–105 of Tort Immunity Act provides:

> "Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." 745 ILCS 10/6–105 (West 2004).

Section 6–106(a) provides:

"Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction." 745 ILCS 10/6–106(a) (West 2004).

On its face, the plain language of these statutory provisions applies to plaintiff's complaint. In particular, section 6–105 grants local public entities immunity for failing to perform a physical examination to determine whether a person has a condition constituting a hazard to that person's health or safety. 745 ILCS 10/6–105 (West 2004). It is undisputed that the City is a local public entity. Plaintiff alleges that the City failed to evaluate or assess Joseph or otherwise provide any assistance. Plaintiff's allegations, therefore, fall within the City's immunity for failing to examine Joseph.

Alternatively, the EMS Act's immunity provision states:

"Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services during a Department approved training course, in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and wanton misconduct." 210 ILCS 50/3.150(a) (West 2004).

In *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274 (2000), this court interpreted a previous version of the EMS Act immunity provision. We find that our decision in *American National Bank* is directly applicable to our interpretation of the current version of that provision. In *American National Bank*, the plaintiff alleged that the City of Chicago and two of its paramedics failed to respond properly to an emergency call for medical assistance. According to the plaintiff, the decedent suffered an asthma attack at her apartment and called 911. She provided her address and telephone number and informed the 911 operator that she lived on the

third floor of the building. Upon arrival, the paramedics were let into the building by her neighbor and went to the third floor. The neighbor informed the paramedics that he had not called for help.

The paramedics knocked on the door of the only other third-floor apartment, but received no response. The neighbor escorted a firefighter though his apartment to the back of the building. The firefighter received no response when he knocked on the back door, and he could not see into the apartment. The dispatcher confirmed that the paramedics were at the correct address. The dispatcher also stated the caller did not give her age and an attempted return call reached an answering machine. The neighbor informed the paramedics that a young couple with no apparent medical problems lived in the apartment. The paramedics concluded that they were not needed at the apartment and left the building. That afternoon, the paramedics returned to the apartment in response to another emergency call. A man let them into the apartment, where they found the decedent on the floor. *American National Bank*, 192 Ill. 2d at 276-77.

The plaintiff alleged, in pertinent part, that the front door of the decedent's apartment was unlocked when the paramedics arrived, and that they acted negligently, willfully, and wantonly in failing to attempt to open the door and enter the apartment. The City and the paramedics moved to dismiss the complaint, contending they were immune from liability under the EMS Act. *American National Bank*, 192 Ill. 2d at 277-78. At that time, the EMS Act provided that:

> "Any person, agency or governmental body licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services during a Department approved training course, in the normal course of conducting their duties, or in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions, including the bypassing of nearby hospitals or medical facilities for the purpose of transporting a trauma patient to a designated trauma center in accordance with the protocols developed pursuant to Section 27 of this Act, are inconsistent with the person's training or constitute willful and wanton misconduct." 210 ILCS 50/17(a) (West 1994).

The plaintiff responded that the EMS Act immunity provision did not apply to bar the claims. Similar to the City's argument in this case, the plaintiff contended that section 17(a) applied only when emergency responders actually furnished life support treatment to a patient and that the provision was inapplicable because the paramedics failed to administer any treatment. *American National Bank*, 192 Ill. 2d at 282. This court rejected the plaintiff's argument, stating that the scope of the immunity provision was not as narrow as the plaintiff contended. *American National Bank*, 192 Ill. 2d at 283. Although the EMS Act defined the terms "advanced life support–mobile intensive care services," "basic life support services," and "intermediate life support services" to include acts or procedures directly involving patient care, this court noted that those definitions are designed to distinguish one level of care from another. The legislature could have reasonably decided to omit from those definitions conduct common to them all or, though preparatory to providing actual medical care, is no less integral in providing life support services. *American National Bank*, 192 Ill. 2d at 283.

This court further noted that section 17(a) also referred to transportation of patients and reasoned that "[i]f transporting a patient to a hospital is an aspect of life support services, then so too is locating a patient in the first place." *American National Bank*, 192 Ill. 2d at 283. Finally, this court observed that the EMS Act's regulation of matters including communications, response time, and ambulance operation standards revealed the Act's broad scope. Accordingly, we held that the term "life support services" must be given an equally broad meaning. *American National Bank*, 192 Ill. 2d at 283.

We, therefore, concluded that the EMS Act's immunity provision applied to the plaintiff's allegations, even though the alleged acts and omissions did not relate to providing actual life support treatment. *American National Bank*, 192 Ill. 2d at 283. We reasoned that "[l]ocating a person in need of emergency medical treatment is the first step in providing life support services." *American National Bank*, 192 Ill. 2d at 286.

The City argues that *American National Bank* does not control our interpretation of the EMS Act immunity provision because that provision was amended after *American National Bank*. The City observes that the term "life support services" has been changed to

"emergency or non-emergency medical services." As noted by the appellate court, however, the amended statute is at least as broad as the prior version. 374 Ill. App. 3d at 754. In fact, we believe that the phrase "emergency or non-emergency medical services" is broader in scope because it encompasses medical services in response to either an emergency or a nonemergency.

In the previous version of the Act, the definitions of advanced, intermediate, and basic life support services referred to providing "emergency care" for the treatment of life-threatening conditions. 210 ILCS 50/4.01, 4.02, 4.06, 4.19, 4.20 (West 1994). Those provisions did not mention nonemergency care or services. The amended statute, however, expressly includes "non-emergency medical care" in the definitions of advanced, intermediate, and basic life support services. 210 ILCS 50/3.10(a), (b), (c) (West 2004). "Non-emergency medical care" is defined to include medical services given to patients during transportation to health-care facilities to obtain nonemergency services. 210 ILCS 50/3.10(g) (West 2004). The phrase "emergency or non-emergency medical services" is broader in scope because it includes both emergency and nonemergency services. Thus, the substitution of "emergency or non-emergency medical services" for "life support services" cannot provide a basis for giving the immunity provision a narrower meaning.

The other changes to the statute identified by the City also do not affect our interpretation in *American National Bank*. The City asserts that the phrase "shall not be civilly or criminally liable" was changed to "shall not be civilly liable." The City does not explain how this amendment affects the meaning of the statute as applied in *American National Bank* or this case. We find that the deletion of criminal liability from the immunity provision does not affect our interpretation in *American National Bank* and is irrelevant to this case involving a claim for civil damages.

The City also notes that the phrase "for purposes of transporting a trauma patient" was deleted from the statute. The City argues that the holding of *American National Bank* is inapplicable because the reference to "transporting" was eliminated. The previous statute provided immunity for acts or omissions, "including the bypassing of nearby hospitals or medical facilities for the purpose of transporting a trauma patient to a designated trauma center." The amended statute

-10-

still refers to "bypassing of nearby hospitals or medical facilities." Transportation of patients is implied by that reference. In fact, deleting the phrase "for purposes of transporting a trauma patient" broadened the statute because that phrase limited the immunity for bypassing hospitals to circumstances when the purpose was to transport a trauma patient to a designated trauma center. Now the immunity for bypassing a hospital does not contain that specific limitation. We conclude that deletion of the term "transporting" does not support a narrower interpretation of the immunity statute. If anything, it supports a broader interpretation.

Finally, the City notes that the previous immunity statute provided for an exception to immunity if the acts or omissions were "inconsistent with the person's training or constitute willful and wanton misconduct," while the amended statute only allows for an exception to immunity if the acts or omissions "constitute willful and wanton misconduct." Again, the City does not explain how this amendment supports a narrower interpretation of the EMS Act immunity provision. In *American National Bank*, the plaintiff alleged that the acts were willful and wanton. *American National Bank*, 192 Ill. 2d at 284-85. The plaintiff did not allege that the paramedics acted beyond their level of training. *American National Bank*, 192 Ill. 2d at 284-85. Thus, the phrase "inconsistent with the person's training" was not at issue in that case, and it could not have affected the interpretation of the immunity provision. As in *American National Bank*, the plaintiff here alleges that the acts or omissions of the emergency responders constituted willful and wanton misconduct. The deletion of the phrase "inconsistent with the person's training" does not affect our interpretation of the immunity provision as applied here.

We conclude that the City's efforts to distinguish *American National Bank* are not persuasive. This court's broad interpretation of the EMS Act immunity provision in *American National Bank* is not nullified by the cited amendments to that provision. In fact, the amendments further broadened the scope of the immunity provision.

Additionally, in *American National Bank*, we relied upon the broad scope of the EMS Act to support our interpretation of the immunity provision. See *American National Bank*, 192 Ill. 2d at 283. The EMS Act continues to regulate expansively the delivery of

-11-

emergency medical services in Illinois. The express intent of the Act is to:

> "provide the State with systems for emergency medical services by establishing within the State Department of Public Health a central authority responsible for the coordination and integration of all activities within the State concerning pre-hospital and inter-hospital emergency medical services, as well as non-emergency medical transports, and the overall planning, evaluation, and regulation of pre-hospital emergency medical services systems.

> * * *

> This legislation is intended to provide minimum standards for the statewide delivery of EMS services." 210 ILCS 50/2 (West 2004).

The Act's provisions are directed at accomplishing the broad purpose of planning, delivering, evaluating, and regulating emergency medical services. The Act requires establishment of Emergency Medical Services Systems (EMS Systems) including hospitals, vehicle service providers, and personnel approved by the Department. 210 ILCS 50/3.20(a) (West 2004). Responsibility for each EMS System is vested in a resource hospital through the EMS medical director. 210 ILCS 50/3.155 (West 2004). The EMS Systems coordinate and provide prehospital and interhospital emergency care under a System program plan approved by the Department. 210 ILCS 50/3.20(a) (West 2004).

"Pre-hospital care" is defined to include "emergency medical services rendered to emergency patients for analytic, resuscitative, stabilizing, or preventive purposes, precedent to and during transportation of such patients to hospitals." 210 ILCS 50/3.10(e) (West 2004). The Act defines various levels of care, including advanced, intermediate, and basic life support services. 210 ILCS 50/3.10(a), (b), (c) (West 2004). Those levels of care encompass a wide range of emergency and nonemergency medical services. 210 ILCS 50/3.10(a), (b), (c) (West 2004). The Act requires the delivery of care to be initiated as authorized by the EMS medical director or under the direction of a physician or emergency communications registered nurse. 210 ILCS 50/3.10(a), (b), (c) (West 2004).

The Department is given expansive authority and responsibility to regulate EMS Systems. 210 ILCS 50/3.20(c) (West 2004). The Department's responsibilities include, among other things: approving EMS Systems meeting its minimum standards and criteria; monitoring EMS Systems based on its standards for continuing operation; renewing EMS System approvals following an inspection; suspending, revoking, or refusing to renew approval of an EMS System; and requiring EMS Systems to adopt written protocols for transporting patients to hospitals. 210 ILCS 50/3.20(c) (West 2004). The EMS Act provides for licensing of EMTs, the scope of their practice, and their training and continuing education. 210 ILCS 50/ 3.50, 3.55, 3.65 (West 2004). Additionally, the Act governs training and certification of registered nurses providing emergency care within EMS Systems. 210 ILCS 50/3.75, 3.80 (West 2004). The Act also provides for training, certification, continuing education, and overall regulation of emergency medical dispatchers. 210 ILCS 50/3.70 (West 2004). The Department is responsible for regulating ambulances and other emergency vehicles, including their design, specifications, equipment and staffing requirements, and operation and maintenance standards. 210 ILCS 50/3.85 (West 2004).

The Act provides for investigation of complaints (210 ILCS 50/3.125 (West 2004)) and fines for noncompliance (210 ILCS 50/3.140 (West 2004)). The Department may also enforce the Act by seeking an injunction to prevent operation without a license or authorization. 210 ILCS 50/3.180 (West 2004).

Thus, our review of the EMS Act reveals that it is a comprehensive, omnibus source of rules governing the planning, delivery, evaluation, and regulation of emergency medical services in Illinois. Our broad construction of the immunity provision in *American National Bank* to include preparatory conduct integral to providing emergency treatment continues to be supported by the EMS Act's comprehensive scope.

The City argues, nonetheless, that the EMS Act applies only after emergency services in the form of treatment are provided, and the Tort Immunity Act applies before any examination, assessment, or treatment is undertaken. Thus, the City contends that the EMS Act and the Tort Immunity Act do not conflict, but operate "each in its own sphere." In support of its argument, the City relies on this court's

decision in *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998).

In *Henrich*, this court considered whether the Tort Immunity Act or the School Code immunity provisions applied to the plaintiff's complaint. *Henrich*, 186 Ill. 2d at 383. The plaintiff alleged that he underwent spine fusion surgery and his surgeon advised him that he was permanently restricted from participating in contact sports during his high school physical education class. The high school knew of the restriction. A substitute teacher, nevertheless, required the plaintiff to participate in a water basketball game during physical education class. During the game, the plaintiff was severely and permanently injured. *Henrich*, 186 Ill. 2d at 384.

The plaintiff alleged, in pertinent part, that the school district's actions constituted willful and wanton misconduct. The district filed a motion to dismiss, asserting absolute immunity under sections 3–108(a) and 3–109 of the Tort Immunity Act (745 ILCS 10/3–108(a), 3–109 (West 1994)). The plaintiff responded that his claim was controlled by sections 24–24 and 34–84a of the School Code (105 ILCS 5/24–24, 34–84a (West 1994)), providing immunity against negligence claims, but not for willful and wanton misconduct. *Henrich*, 186 Ill. 2d at 384-85. The trial court dismissed the plaintiff's claims based on the Tort Immunity Act, and the appellate court affirmed. *Henrich*, 186 Ill. 2d at 385-86.

This court affirmed the appellate court, holding that the plain language of the Tort Immunity Act controlled the disposition of the plaintiff's complaint. *Henrich*, 186 Ill. 2d at 395. The plaintiff's argument that the specific provisions of the School Code controlled over the general provisions of the Tort Immunity Act was not dispositive. Rather, in construing the relevant provisions together, we found that "each stands in its own sphere." *Henrich*, 186 Ill. 2d at 391-92. Section 24–24 of the School Code applies to both public and private schools while section 3–108(a) of the Tort Immunity Act applies only to public schools. *Henrich*, 186 Ill. 2d at 392. This court concluded that the plain language of the Tort Immunity Act indicated the legislature's intent to grant public school districts and teachers greater immunity than private schools and their teachers. *Henrich*, 186 Ill. 2d at 392.

The City argues that the provisions of the EMS Act and the Tort Immunity Act can be harmonized as in *Henrich*. The City asserts that the Tort Immunity Act should be construed to apply before emergency treatment is provided and the EMS Act to apply after emergency treatment is given.

We disagree with the City's argument that the EMS Act and Tort Immunity Act can be harmonized. As the appellate court noted, the City's interpretation of the EMS Act immunity provision to apply only after treatment has begun is counter to our decision in *American National Bank*. See 374 Ill. App. 3d at 752-53. In *American National Bank*, we rejected the argument that the immunity provision applied only when treatment was actually administered to a patient. *American National Bank*, 192 Ill. 2d at 282-83. Instead, we held that the immunity provision encompassed preparatory conduct integral to providing emergency treatment. *American National Bank*, 192 Ill. 2d at 283. Our interpretation is considered part of the statute itself until the legislature amends it contrary to that interpretation. *Henrich*, 186 Ill. 2d at 387, citing *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). The legislature has not amended the immunity provision contrary to our interpretation to limit its meaning. If anything, the legislature's amendments have broadened the scope of that provision. Thus, we cannot harmonize the EMS Act immunity provision with the Tort Immunity Act by construing it in the manner suggested by the City.

Our decision in *Moore v. Green*, 219 Ill. 2d 470 (2006), is also applicable here. In *Moore*, the plaintiff alleged that the City of Chicago and two of its police officers were willful and wanton in failing to respond properly to a call for assistance from a domestic violence victim. *Moore*, 219 Ill. 2d at 474-75. The sole issue was whether the absolute immunity provisions of the Tort Immunity Act (745 ILCS 10/4–102, 4–107 (West 2002)), or the limited immunity provision of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/305 (West 2002)), governed the plaintiff's allegations. *Moore*, 219 Ill. 2d at 474.

This court held that the immunity provisions could not be harmonized because they both clearly applied to the plaintiff's allegations. *Moore*, 219 Ill. 2d at 487. We rejected as unreasonable the defendants' contention that the Domestic Violence Act immunity provision should be limited to law enforcement officers who were

outside the scope of the Tort Immunity Act. *Moore*, 219 Ill. 2d at 487-88. We determined that "[i]t would pervert the broad purposes of the Domestic Violence Act to conclude that the immunity created by section 305 was intended to apply only to law enforcement agencies and agents beyond the Tort Immunity Act's shield, who are less likely to investigate domestic violence calls or to enforce the Act." *Moore*, 219 Ill. 2d at 488. This court held that the defendant's interpretation would undermine the Domestic Violence Act provisions outlining the duties of municipal police officers in responding to domestic violence calls. *Moore*, 219 Ill. 2d at 488.

In this case, both the Tort Immunity Act and the EMS Act immunity provisions apply to plaintiff's complaint. Thus, those statutes cannot be harmonized. See *Moore*, 219 Ill. 2d at 487 (immunity provisions could not be harmonized because both applied to the plaintiff's complaint). While we will attempt to interpret conflicting statutes together, *in pari materia*, when such an interpretation is reasonable (*Moore*, 219 Ill. 2d at 479), the City's proposed construction of the EMS Act immunity provision is not reasonable because it directly contradicts our construction of the EMS Act in *American National Bank*.

Moreover, the City's construction is inconsistent with the EMS Act's comprehensive scope. The EMS Act provides for the coordination and integration of all prehospital and interhospital emergency medical services. 210 ILCS 50/2 (West 2004). The Act is an omnibus source of rules governing all aspects of emergency medical services, including overall planning, delivery, evaluation, and regulation. The City's narrow interpretation of the EMS Act immunity provision cannot be squared with that Act's comprehensive scope. See *American National Bank*, 192 Ill. 2d at 283 (EMS Act immunity provision must be given a broad meaning in light of the Act's expansive scope).

Our interpretation of the EMS Act immunity provision in *American National Bank* remains valid. That provision has been interpreted broadly to include preparatory actions integral to providing emergency treatment. Plaintiff here alleges that the City failed to assess, examine, or transport Joseph to a hospital. Assessment and evaluation are integral to providing emergency medical services. One of the first steps in providing emergency care

is assessing the patient to determine the necessary medical services. No treatment or emergency care can be provided until the patient's condition is assessed.

We also note that the EMS Act immunizes "acts or omissions" in providing emergency medical services unless those acts or omissions constitute willful and wanton misconduct. 210 ILCS 50/3.150(a) (West 2004). The failure to assess or examine is an "omission" in providing emergency medical services under our interpretation of the immunity provision. See also *Moore*, 219 Ill. 2d at 490 (police officers' failure to offer any emergency assistance fell within Domestic Violence Act immunity for acts or omissions in providing emergency assistance). Thus, we conclude that the EMS Act immunity provision applies to the allegations of plaintiff's complaint.

Having determined that both immunity provisions may apply to these facts, we must decide whether the EMS Act or the Tort Immunity Act governs here. When a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern. *Moore*, 219 Ill. 2d at 480, citing *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). We will also presume that the legislature intended the more recent provision to control. *Moore*, 219 Ill. 2d at 480, citing *State v. Mikusch*, 138 Ill. 2d 242, 254 (1990).

The EMS Act is directed specifically to the planning, delivery, evaluation, and regulation of emergency medical services. The immunity provision applies to all people, agencies, and governmental bodies licensed or authorized under the Act to provide those services. 210 ILCS 50/3.150(a) (West 2004). Thus, the EMS Act is designed to apply to the delivery of emergency medical services. In contrast, the relevant sections of the Tort Immunity Act have a more general application to tort claims against local public entities and public employees for failing to perform, or adequately perform, an examination or a diagnosis. 745 ILCS 10/6–105, 6–106(a) (West 2004). We conclude that the EMS Act is more specifically related to the facts here involving emergency responders and the delivery of emergency medical care.

The EMS Act was also enacted more recently than the Tort Immunity Act provisions. Sections 6–105 and 6–106(a) of the Tort Immunity Act were enacted in 1965 (745 ILCS 10/6–105, 6–106(a)

(West 2004)), while the EMS Act immunity provision was enacted 30 years later, in 1995 (210 ILCS 50/3.150(a) (West 2004)). Accordingly, we presume that the EMS Act controls here because it is the more specific and recent provision.

In *Moore*, we also looked to the legislature's intent in deciding whether the Tort Immunity Act or the Domestic Violence Act governed the plaintiff's allegations. We reaffirmed that our "singular concern" is to ascertain and give effect to the intent of the legislature. *Moore*, 219 Ill. 2d at 488. We concluded that the legislature's intent was clear from the language of the Domestic Violence Act, stating:

> "The structure of that Act reflects a comprehensive statutory scheme for reform of the legal system's historically inadequate response to domestic violence. The Domestic Violence Act, in effect, is an omnibus source for rules regarding such cases. It begins with a broad statement of its purposes [citation] and a broad statement of the persons it protects [citation]. Most importantly for this case, it details the responsibilities of law enforcement officers." *Moore*, 219 Ill. 2d at 488-89.

We concluded that the limited immunity provision of the Domestic Violence Act was a direct expression of legislative intent, and it governed the plaintiff's allegations. *Moore*, 219 Ill. 2d at 489-90.

Similar to the Domestic Violence Act, the EMS Act begins with a broad statement of its purpose. The purpose of the Act includes coordinating and integrating all prehospital emergency medical services activities. 210 ILCS 50/2 (West 2004). The Act's express purpose also includes providing for the overall planning, delivery, evaluation, and regulation of emergency medical services systems. 210 ILCS 50/2 (West 2004). The provisions of the Act are also an omnibus source of rules aimed at achieving those broad purposes. The broad purposes, comprehensive scheme, and entire structure of the EMS Act indicate an intent for the immunity provision from that Act to govern cases involving emergency medical services.

The City notes that the Domestic Violence Act details the responsibilities of police officers in responding to domestic violence situations, but the EMS Act does not enumerate any duties of emergency responders. The City emphasizes this distinction, arguing

-18-

that the EMS Act does not impose any duty to provide emergency medical services.

We recognize that in *Moore* this court relied, in part, on the duties imposed upon police officers in concluding that the Domestic Violence Act governed. *Moore*, 219 Ill. 2d at 488-89. That factor was not dispositive, however. Rather, it was only one factor weighing upon the determination of the legislature's intent. Our decision in *Moore* was based on several factors. We presume that the EMS Act controls here as the more specific and recent statute. Additionally, the purpose, scheme, and structure of the EMS Act shows the legislature intended for its immunity provision to govern.

We also note that the City has not challenged the existence of a duty to provide emergency medical assistance in this case. In fact, the City admitted the legal sufficiency of plaintiff's tort claims, including the existence of a duty, by filing a motion to dismiss the complaint under section 2–619. *Moore*, 219 Ill. 2d at 477-78. The only issue here is whether an immunity applies to bar plaintiff's claims.

In sum, we conclude that the EMS Act limited immunity provision governs here over sections 6–105 and 6–106(a) of the Tort Immunity Act. The only basis for dismissal asserted in the City's section 2–619 motion to dismiss was absolute immunity under sections 6–105 and 6–106(a) of the Tort Immunity Act. Given our conclusion that the Tort Immunity Act does not govern here, we must reverse the dismissal of the complaint and remand the matter for further proceedings.

## III. CONCLUSION

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed and the cause is remanded to the circuit court for further proceedings.

*Reversed and remanded.*

-19-